**JAMAL S. MUHAMMAD**
California State Bar No. 290712
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Jamal_Muhammad@fd.org

Attorneys for Mr. Fierro

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE WILLIAM Q. HAYES)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 17CR3096-WQH |
| Plaintiff, | Date: Feb. 12, 2018 |
| v. | Time: 2:00 pm |
| KEVIN URGARIT FIERRO-MORALES (1), | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS |
| Defendant. | |

**STATEMENT OF FACTS**

**MR. FIERRO**

Mr. Fierro is a 22 year old young man who plans on going to college. He was born in Mexico and parents brought him to the United States when he was just 3 years old, and he has never been back. (DACA Application, Ex. A). Mr. Fierro grew up in the United States. He went to school here and graduated from high school here. (Ex. B, High School Diploma, Ex. B). His entire immediate family resides in the United States. He has no criminal record.

**ARREST, DISMISSAL OF STATE CHARGES, FEDERAL CHARGES**

On September 10, 2017, Mr. Fierro and the co-defendant were arrested by San Diego Police officers. According to the discovery, an officer allegedly saw the co-

1                                                                                17CR3096-WQH

defendant driving his car in an unsafe manner, and believed that the occupants of the car, may have illegally discharged a firearm. (Dkt. 1). Officer claim to have found an unregistered firearm in the co-defendant's car. *Id*. Mr. Fierro and his co-defendant were originally charged by the State of California, but that prosecution was dismissed and the men were charged federally. On September 7, 2017, the both men were indicted for possession of an unregistered firearm and aiding and abetting. (Dkt. 19). Neither the gun nor vehicle belonged to Mr. Fierro. The indictment does not state what action the government believes that Mr. Fierro took that would be tantamount to possessing the gun or aiding and abetting the co-defendant possess the gun. Mr. Fierro was also indicted for being an alien illegally in the United States in possession of a firearm. (Dkt. 19). Who made the decision to charge Mr. Fierro federally is not clear. What is clear, is that the United States Attorney Office's decision to charge Mr. Fierro, is a stark departure from its past practices.

For at least the last five years, the United States Attorney's Office for the Southern District of California as not charged anyone with possession of an unregistered firearm or illegal alien in possession of a firearm unless: (1) they have serious criminal history; (2) they were involved in a drug conspiracy; or (3) their case was initiated by a federal law enforcement agency. (Exs. C and D, Charts of Relevant Gun Prosecutions). None these factors is present here. Mr. Fierro has no criminal history. This case does not involve a drug trafficking. Mr. Fierro's case did not begin as the result of an investigation by federal law enforcement officials. However, as stated before, he is a Mexican national and a recipient of Deferred Action for Childhood Arrivals ("DACA"), which allows aliens who were brought to the United States as children, to remain in the United States, provided they satisfy certain criteria.

///
///
///
//

**DEFERRED ACTION FOR CHILDHOOD ARRIVALS ("DACA")**

DACA was created by the Department of Homelands Security to prevent the deportation of people who:

- came to the United States under the age of sixteen;
  …
- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;
- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and
- is not above the age of thirty.

U.S. Dep't of Homeland of Homeland Security, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012) available at https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf.  An alien can apply for DACA status and once approved, United States Customs & Immigration Enforcement (USCIS) policy provides that DACA recipients shall not be deported for a period of two years or as long as they continue to meet the criteria for approval. *See* www.USCIS.gov, Consideration of Deferred Action for Childhood Arrivals (DACA) (a*vailable at* https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-daca (last visited Feb. 4, 2018).

According to the United States Citizenship and Immigration Services:

> [A]lthough deferred action does not confer a lawful immigration status, your period of stay is authorized by the Department of Homeland Security while your deferred action is in effect and, for admissibility purposes, **you are considered to be lawfully present in the United States** during that time. Individuals granted deferred action are not precluded by federal law from establishing domicile in the U.S.

https://www.uscis.gov/archive/frequently-asked-questions (Q5, last visited February 4, 2018) (emphasis changed).

DACA recipients may apply for and receive employment authorization to legally work in this country. *See id.*; and 8 C.F.R. § 274a.12(a)(10), (11), (14) (2010). They may also receive driver's licenses. *Arizona Dream Coalition v. Brewer*, 818 F.3d 901 (9th Cir. 2106), *reh'g en banc denied*, 855 F.3d 957 (9th Cir. 2017). They enjoy the protections of our Constitution with respect to employment discrimination. *Juarez v. Northwestern Mutual Life Ins. Co. Inc.*, 69 F.Supp.3d 364 (S.D.N.Y. 2014). They may enlist in the United States Military and are among a limited class of "nonimmigrant" aliens eligible for the Military Accessions Vital to National Interest Program, also a deferred action program purposed to recruit skilled workers to the military. USCIS POLICY MANUAL, Vol. 12, Part I, Ch. 3, Sec. G. (*Available at* https://www.uscis.gov/policymanual/Print/PolicyManual-TableOfContents.html) (last visited Feb. 6, 2018).

Individuals with deferred action status stop accruing "unlawful presence" for purposes of 8 U.S.C. § 1182(a)(9). *See e.g.*, 8 C.F.R. § 214.14(d)(3); 28 C.F.R. § 1100.35(b)(2). Congress has recognized that recipients of deferred action possess "[e]vidence of [l]awful [s]tatus" for purposes of state-issued identification. REAL ID Act of 2005, Pub. L. No. 109-13, div. B, § 202(c)(2)(B)(viii), 119 Stat. 231, 302.

Mr. Fierro's motions follow.

## I.
## MOTION TO DISMISS COUNT II

Mr. Fierro moves the Court, pursuant to Federal Rules of Criminal Procedure 12 and 47, and the Fifth and Fourteenth Amendments to the United States Constitution, to dismiss the Count II of the indictment. Count II, which alleges Mr. Fierro is an alien who is unlawfully or illegally present in the United States, who possessed a firearm, must be dismissed because: (1) he is not illegally or unlawfully present in the United States because the government has already told him that his presence is lawful based on his DACA status; and (2) the law unconstitutionally vague as applied to DACA

recipients because the law is insufficiently clear if it applies to DACA recipients whose presence in the United States is lawful for some purposes.

### A. COUNT II MUST BE DISMISSED BECAUSE IT FAILS TO STATE AN OFFENSE. MR. FIERRO'S DACA STATUS MADE HIS PRESENCE IN THE UNITED STATES LAWFUL.

Mr. Fierro moves to dismiss Count 2 in this case because it fails to state an offense for which a conviction can be achieved. An indictment must be tested by its sufficiency to charge an offense on a motion to dismiss. *United States v. Sampson*, 371 U.S. 75, 78 (1962). Fed. R. Crim. P. 12(b)(3)(B)(v) "allows a defendant to file a pretrial motion to dismiss an indictment for failure to state an offense if the motion 'can be determined without a trial on the merits.'" *United States v. Kelly,* 874 F.3d 1037, 1046 (9th Cir. 2017) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)). A pretrial motion to dismiss is appropriate if the issue at hand involved a question of law as oppose to a question of fact. *Kelly*, 874 F.3d at 1046; *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (quotations omitted).

Mr. Fierro challenges the sufficiency of Count 2 to charge an offense and raises a question of law as to whether the statute at issue was intended to apply to recipients of valid deferral status, such as DACA. He does not dispute the facts alleged in the indictment, but rather submits undisputed extrinsic evidence that demonstrates his possession of valid DACA status at the time of the arrest. He submits, therefore, that the government is, as a matter of law, incapable of proving beyond a reasonable doubt the essential element that Mr. Fierro was "illegally or unlawfully" present in the United States as 18 U.S.C. § 922(g)(5) requires. Trial on the substantive charge would not "substantially assist" this court in deciding the legal issue raised by this motion, and the appropriate avenue for relief is a motion to dismiss.

/ / /

/ / /

/ / /

### 1. According to the Government, DACA Recipients Are "Lawfully" Present In The United States.

The government has already informed DACA recipients that their presence in the United States is legal: "while your deferred action is in effect and, for admissibility purposes, **you are considered to be lawfully present in the United States** during that time." https://www.uscis.gov/archive/frequently-asked-questions (Q5, last visited February 4, 2018) (emphasis changed). Moreover, the government has confirmed that DACA recipients can actually live in the United States: "Individuals granted deferred action are not precluded by federal law from establishing domicile in the U.S." *Id*. Further still, DACA recipients can get permission to legally work in this country (*see id*.; 8 C.F.R. § 274a.12(a)(10), (11), (14) (2010)), get a driver's license (*Arizona Dream Coalition*, 818 F.3d 901), and join the military (*Available at* https://www.uscis.gov/policymanual/Print/PolicyManual-TableOfContents.html).

The government cannot tell someone that they there presence in the United States is lawful and charge them with a crime applicable to people who are here unlawfully. Count II must be dismissed.

### 2. DACA Is Similar To Other Deferred Immigration Statuses, Which Confer Lawful Presence.

In *United States v. Orellana*, the Fifth Circuit determined that the defendant, who had applied for and was granted Temporary Protected Status (TPS), was not illegally or unlawfully present in the United States for purposes of § 922(g)(5). 405 F.3d 360, 370 (5th Cir. 2005). Like individuals with DACA, TPS recipients must submit an application, submit to a background check, and may not be deported "from the United States so long as the registration is in effect." *Id*. at 363-64. TPS aliens may receive authorization to work, may travel abroad with prior approval, must register annually to maintain the status, and their status may be withdrawn by the Attorney General. *Id*. at 364. Upon withdrawal, the alien reverts to their prior immigrant status. *Id*. However, TPS does not render a person a permanent resident to make them eligible for public

assistance programs. *Id*. at 365. These characteristics all apply equally to DACA recipients.

The Fifth Circuit distinguished TPS recipients from those who have merely applied for TPS and received temporary benefits. *Id*. at 370 (citing *United States v. Flores*, 404 F.3d 320 (2005)). The court noted that the temporary extension of benefits pending a decision on the application conferred no legal status. *Id*. However, here the circumstances align more with TPS grantees – Mr. Fierro applied for and was granted DACA status, submitted to a background check, and could not be deported. (Ex. A).

The Sixth Circuit has held in a civil opinion that aliens with TPS could be considered "lawful" for purposes of adjustment of status. *Flores v. United States Citizenship and Immigration Service*, 718 F.3d 548 (6th Cir. 2013). This is the only difference between TPS and DACA recipients. Otherwise, TPS and DACA recipients are virtually indistinguishable.

An alien with special immigrant juvenile status is not illegally or unlawfully present for § 922(g) purposes either. *United States v. Santiago-Hernandez*, 113 F.Supp.3d 966 (W.D. Mich. 2015). Like individuals with DACA, special immigrant juveniles receive no lawful ***immigration status*** under the immigration law. *Id*. at 967. Aliens applying for immigration status are not unlawfully present under § 922(g), even though they have not yet been approved. *United States v. Hernandez*, 913 F.2d 1506 (10th Cir. 1990). The Tenth Circuit further clarified that aliens may be considered illegally and unlawfully present under § 922(g), "unless otherwise authorized to be in this country[.]" *United States v. Atandi*, 376 F.3d 1186 (10th Cir. 2004). Therefore, it necessarily follows that DACA recipients cannot be considered illegally and unlawfully present under § 922(g) even though they receive no lawful immigration status, because they are otherwise authorized to be in this country. Count II must therefore be dismissed.

/ / /

/ / /

### B. COUNT II SHOULD BE DISMISSED AS UNCONSTIUTIONALLY VOID FOR VAGUENESS AS APPLIED TO DACA RECIPIENTS.

#### 1. A Statute Is Unconstitutionally Vague When Undefined Terms Fail To Plainly and Unmistakably Put Defendants On Notice Regarding What Conduct Is Prohibited.

"Before a man can be punished as a criminal under the Federal law his case must be '*plainly and unmistakably*' within the provisions of some statute." *United States v. Gradwell*, 243 U.S. 476, 485 (1917) (emphasis added) (*citing United States v. Lacher*, 134 U.S. 624 628 (1890)).  Consequentially, "[a] statute is unconstitutionally vague as applied if it failed to put the defendant on notice that his conduct was criminal." *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009). Prohibited conduct must be clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *United States v. Purdy*, 264 F.3d 809 (9th Cir. 2001). "For statutes involving criminal sanctions, the requirement for clarity is enhanced." *Kilbride*, 584 F.3d at 1257.  "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008) (citations omitted).

#### 2. The Terms "Illegally" Or "Unlawfully" Are Not Define So The Court Must Use Their Plain Meaning.

When a term is not clearly defined by Congress, courts will construe the term according to its "ordinary and contemporary, common meaning." *United States v. W.R. Grace*, 504 F3d 745 755 (9th Cir. 2007).  Courts can refer to the dictionary to determine the ordinary and contemporary common meaning. *See, e.g.*, *Kilbride*, 584 F.3d. 1240, 1257. In this case, 18 U.S.C. § 922(g)(a)(5)(A), prohibits aliens who are "illegally or unlawfully" in the United States to possess a firearm which has been shipped or transported through interstate commerce.  "Illegal" and "unlawful" are not defined by the statute.

/ / /

/ / /

3.  **The Plain Meaning Of The Terms "Illegally" Or "Unlawfully" Present Reflects DACA Recipients' Presence In the United States Is Neither Illegal nor Unlawful.**

According to the plain meaning rule, DACA recipients are lawfully and legally present in the United States. Webster's Dictionary defines "illegal" as: "not according to or authorized by law" and "not sanctioned by official rules." https://www.merriam-webster.com/dictionary/illegal. The dictionary defines "unlawful" as: "not lawful: illegal," and "not morally right or conventional." https://www.merriam-webster.com/dictionary/unlawful.

A DACA recipient's presence in the United States is sanctioned by official rules and is morally acceptable. First, the government has created rules to allow people who qualify in to remain in the United States. U.S. Dep't of Homeland of Homeland Security, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012) available at https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf. Mr. Fierro's approved DACA application reflects the government agrees that he had met the sanctioned government rules. XXXX. Because he has met as satisfied the government's requirements, he can lawfully reside in the United States, irrespective of his immigration status: "while your deferred action is in effect and, for admissibility purposes, **you are considered to be lawfully present in the United States** during that time." https://www.uscis.gov/archive/frequently-asked-questions (Q5) (emphasis changed). The government has also given him permission to legally work in this country *(see id.*; 8 C.F.R. § 274a.12(a)(10), (11), (14) (2010)), get a driver's license (*Arizona Dream Coalition*, 818 F.3d 901), and potentially join the military (USCIS POLICY MANUAL, Vol. 12, Part I, Ch. 3, Sec. G. (*Available at* https://www.uscis.gov/policymanual/Print/PolicyManual-TableOfContents.html).

Irrespective of whether as a matter of law the government has conferred some *immigration status* to DACA recipients, DACA recipients' *presence* in the United States is not unlawful or illegal based on the plain meaning of these words. To the extent

the government asserts DACA recipients' presence in the United States is illegal for purposes of 18 U.S.C. § 922(g)(5)(A), the law is constitutionally vague as applied because it fails to put DACA recipients on notice that their presence is unlawful for the purposes of owning a gun. Moreover, the rule of lenity requires the ambuguity to be interpreted in favor of the defendant. *See, e.g., Santos*, 553 U.S. at 514.

### 4. The One Court Which Has Addressed Whether 18 U.S.C. § 922(g)(5)(A) Was Unconstitutionally Vague As Applied To DACA Recipients, Found It Was Unconstitutionally Vague.

Only one court has addressed the constitutionality of 18 U.S.C. § 922(g)(5)(A) as applied to DACA recipients. *United States v. Lopez*, No. 17CR62, 2017 WL 6347850 (ED Tenn. Dec. 12, 2017), appeal docketed, No. 18-5042 (6 th Cir. Jan. 12, 2018). That court held the law was unconstitutionally vague as applied. *Id*. at *4-5.

In *Lopez*, the defendant, a DACA recipient, moved to dismiss the indictment in part because it was unconstitutionally vague as applied to DACA recipients. *Id*. at *4. More specifically, the defendant argued that the plain meaning of "illegally or unlawfully present in the United States," could be read to refer to either lawful presence or official immigration status. The court found the DACA recipient lawfully present in the United States for some purposes, such that it law is insufficiently clear as to whether he was unlawfully present in the United States for purposes of 18 U.S.C. § 922(g)(5)(A). The court dismissed the indictment as unconstitutionally vague. *Id*.

The key issue in this case is identical. Mr. Fierro is a DACA recipient. The government has sanctioned his presence in the United States vis-à-vis the DACA. The under the current regulations, he can live in the United States. He can work here. He can join the military. He can get a license. At worst, the law is insufficiently clear as to whether a DACA recipient is "illegally or unlawfully present in the United States," for purposes of possessing a firearm under of 18 U.S.C. § 922(g)(5)(A), despite his sanctioned presence by the government. Count II is unconstitutionally vague as applied to DACA recipients. It must be dismissed.

WHEREFORE, for the foregoing reasons and such other that this Honorable Court may deem just and proper after a hearing on this Motion, Mr. Fierro respectfully requests that this Honorable Court grant this Motion and dismiss Count II of the indictment with prejudice.

## II.
## MOTION TO PRECLUDE THE PROSECUTION FROM PROCEEDING UNDER AN AIDING AND ABETTING THEORY

Mr. Fierro moves this Court, pursuant to the Fifth Amendment and all other applicable laws, to preclude the Government from proceeding under an aiding and abetting theory for the following reasons.

### A. Aiding And Abetting Requires Proof Of Specific Intent Beyond The Elements Of The Underlying Offense, And The Government's Failure To Allege This Element In The Indictment Is A Material Omission.

The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V. Consistent with this requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished[.]" *United States v. Carll*, 105 U.S. 611, 612 (1881). An indictment that does not allege an element of an offense, even an implied element, is defective. *Russell v. United States*, 369 U.S. 749, 763–64 (1962). "'[A]n indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment.'" *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (quoting *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999)).

In the Ninth Circuit, the "law is clear that aiding and abetting contains an additional element of specific intent, beyond the mental state required by the principal crime." *United States v. Sayetsitty*, 107 F.3d 1405, 1412 (9th Cir. 1997).

The elements necessary to convict an individual under an aiding and abetting theory are (1) *that the accused had the specific intent to facilitate*

> *the commission of a crime by another*, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.

*Id.* (emphasis in original) (quoting *United States v. Gaskins*, 849 F.2d 454, 459 (9th Cir. 1988)); *see also United States v. Lopez*, 484 F.3d 1186, 1199 (9th Cir. 2007) (*en banc*) ("We have held that aiding and abetting has four elements including, as most relevant here, 'that the accused had the specific intent to facilitate the commission of a crime by another' and 'that the accused assisted or participated in the commission of the underlying substantive offense.'") (quoting *Gaskins*, 849 F.2d at 459). "It is the aider and abettor's state of mind, rather than the state of mind of the principal, that determines the former's liability." *United States v. Short*, 493 F.2d 1170, 1172 (9th Cir.), *modified*, 500 F.2d 676 (9th Cir. 1974).

Given that "the specific intent to facilitate the commission of a crime by another" is an element of aiding and abetting, *Gaskins*, 849 F.2d at 459, it must be charged in the indictment. "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002).

### B. The Cases Holding That The Aiding And Abetting Theory Is Implied In Every Federal Indictment Are Not To The Contrary.

The Ninth Circuit has stated in two particular circumstances that aiding and abetting is implied in the indictment. *See United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005); *United States v. Armstrong*, 909 F.2d 1238, 1241–42 (9th Cir. 1989); *United States v. Michaels*, 796 F.2d 1112, 1118 (9th Cir. 1986). These cases only address situations where either: (1) aiding and abetting was charged in the indictment, or (2) the defendant was challenging the jury instructions, not a defective indictment. Accordingly, these cases do not resolve the issue here. *See Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("unstated assumptions on non-litigated issues are not precedential holdings binding future decisions."); *Webster v. Fall*,

266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

*Armstrong* and its antecedents do *not* hold that an indictment may omit the additional intent element required for a conviction under the aiding and abetting theory. The aiding and abetting statute, 18 U.S.C. § 2, "states a rule of criminal responsibility for acts which one assists another in performing." *Nye & Nissen v. United States*, 336 U.S. 613, 620 (1949). Thus, the "acts" described in the statute merely describe the *means* of committing an offense. *Armstrong* and its antecedents simply recognize that § 2 sets forth the acts of the defendant that expose him or her to liability as a principal.

### C. Neither The Prosecution Nor The Court May Broaden The Permissible Bases For Conviction Beyond Those Charged In The Indictment.

The Supreme Court has held that a district court may not broaden the possible bases for conviction beyond those alleged in the indictment. *Stirone v. United States*, 361 U.S. 212, 217–18 (1960). Requiring the proof to remain true to the indictment enables the grand jury to protect citizens from the unilateral power of the Government to institute criminal prosecutions. *United States v. Miller*, 471 U.S. 130, 139 (1985) (citing Stirone, 361 U.S. at 218–19). The Supreme Court has held:

> [i]f it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

*Ex parte Bain*, 121 U.S. 1, 10 (1962), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002).

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Von Stoll*, 726 F.2d 584, 586

(9th Cir. 1984) (emphasis omitted). *See also United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998) (recognizing that a court may not constructively amend the indictment through its instructions to the jury); *United States v. Dipentino*, 242 F.3d 1090, 1094–95 (9th Cir. 2001) (finding a constructive amendment where district court instructed jury on work practice standard not alleged in indictment); *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994) (holding that trial proof that "goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury" is "[t]ermed a constructive of the indictment" and "violates the Fifth Amendment since the Grand Jury Clause limits the available bases for conviction to those contained in the indictment"); *United States v. Leichtnam*, 948 F.2d 370, 380–81 (7th Cir. 1991) (finding constructive amendment where indictment charged the defendant with using a specific firearm and where the evidence and the district court's instructions "broaden[ed] the possible bases for conviction to include knowingly using or carrying *any* firearm") (emphasis in original); *United States v. Weissman*, 899 F.2d 1111, 1115 (11th Cir. 1990) (finding constructive amendment and observing that "it must be stressed that the government, through its ability to craft indictments, is the master of the scope of the charged [offense] . . . . It is the prosecution which sets the parameters to which . . . trial [of the offense] must be confined; having set the stage, the government must be satisfied with the limits of its own creation.") (citations and alternations omitted). A constructive amendment always requires reversal because it deprives a defendant of her right to be tried only on the grand jury's charge. *Stirone*, 361 U.S. at 217; *United States v. Floresca*, 38 F.3d 706, 713 (4th Cir. 1994) (en banc).

Applying these principles here, if the indictment fails to set forth the additional element of specific intent required to convict a defendant under the aiding and abetting theory, neither the government nor this Court can broaden the indictment to include aiding and abetting as a possible basis for conviction.

///

### D. The Indictment Here Does Not Authorize The Prosecution To Proceed Under An Aiding And Abetting Theory.

*Sayetsitty* clearly holds that to convict a defendant under an aiding and abetting theory, the government must prove at least two different intent elements: (1) the defendant must have specifically intended to aid the principal in the commission of the offense, and (2) the defendant must have the requisite intent for the underlying offense. 107 F.3d at 1412; *see also Garcia*, 400 F.3d at 819 n.2. Thus, aiding and abetting requires proof of an *additional* intent element beyond the intent required by the principle crime. See *Sayetsitty*, 107 F.3d at 1412.

Here, for example, to convict under an aiding-and-abetting theory, the government needs to prove that the Mr. Fierro intended to aid a principal in the commission of the offense, in addition to proving the intent elements attributed to the principal. These are distinct elements, and under *Hill* and *Du Bo,* and all elements need to be alleged in the indictment. See *Du Bo*, 186 F.3d at 1179; *Hill*, 279 F.3d at 741.

Because the indictment here failed to allege this additional intent element, this Court may not allow the Government to proceed under an aiding and abetting theory. A contrary holding would constructively amend the indictment and impermissibly broaden the scope of the charges.

### E. The Indictment's Mere Citation To 18 U.S.C. § 2, The Aiding-And-Abetting Statute, Does Not Render The Indictment Sufficient.

Here, the indictment—without more—cited 18 U.S.C. § 2. The government may argue that even if the intent to aid and abet were required to be alleged in the indictment, the citation to the statute rendered the indictment sufficient.

But including in the indictment the words "aiding and abetting," a citation to 18 U.S.C. § 2, or language from that statute will not save the indictment from dismissal. Rather, the *essential element*, recognized by the Ninth Circuit's case law, that the defendant had the specific intent to aid the principal in the commission of the offense must be alleged in the indictment.

1  The Ninth Circuit's case law on this point cannot be clearer: when the indictment is questioned prior to trial, "[a] correct citation to the statute is not sufficient to compensate for the exclusion [of an essential element]." *United States v. Kurka*, 818 F.2d 1427, 1431 (9th Cir. 1987) (citing *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986); *United States v. Rojo*, 727 F.2d 1415, 1418–19 (9th Cir. 1983)); *accord United States v. James*, 980 F.2d 1314, 1318 (9th Cir. 1992). In *Kurka*, the defendant moved to dismiss the indictment on the ground that it failed to allege that damage to property was willful. 818 F.2d at 1428. Even though the indictment cited the correct statute, the Ninth Circuit held that "[t]he failure to include the element of willfulness . . . render[ed] the indictment constitutionally defective," and accordingly reversed the defendant's conviction. *Id*. at 1430-31. Likewise, here, mere citation to 18 U.S.C. § 2 does not render the indictment sufficient.

Moreover, 18 U.S.C. § 2 does not set forth any offense elements. <u>See</u> <u>Armstrong</u>, 909 F.2d at 1241. As such, mere citation to this statute does not reflect that the Grand Jury considered, much less found, the essential element that a defendant had the specific intent to aid the principal in the commission of the offense. For this alternative reason, citation to 18 U.S.C. § 2 does not cure the deficiency in the indictment. Accordingly, this Court should preclude the Government from proceeding under an aiding and abetting theory.

WHEREFORE, for the foregoing reasons and such other that this Honorable Court may deem just and proper after a hearing on this Motion, Mr. Fierro respectfully requests that this Honorable Court grant this Motion and dismiss the indictment with prejudice.

### III.
### MOTION FOR BILL OF PARTICULARS

Count I of the indictment charges Mr. Fierro with knowingly possessing an unregistered firearm, and/or aiding and abetting the co-defendant possess an unregistered firearm. Because the Count I does not sufficiently inform Mr. Fierro of the

charges against him, he respectfully requests that this Court order the Government to file a bill of particulars, pursuant to his Fifth and Sixth Amendment rights.

A bill of particulars is warranted where it will enable adequate preparation of the defense and prevent surprise at trial. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979). It provides a defendant with the details of the charges necessary to present a defense, to avoid prejudicial surprise at trial, and to protect against a second prosecution based on the same facts. *See United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) (a bill of particulars "is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy."); *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963) (*per curiam*) ("The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense, and enable him to prepare an intelligent defense.").

Under the Fifth and Sixth Amendments and Fed. R. Crim. P. 7(f), Mr. Fierro has a right to notice of the charges against him and to a fair trial with an opportunity to defend himself against the charges. *See Giese*, 597 F.2d at 1180; see also *United States v. Anderson*, 532 F.2d 1218, 1231 (9th Cir. 1976) (Duniway, J., dissenting). But the indictment filed against Mr. Fierro does not specify how the alleged possession of a firearm "affected" interstate commerce. Moreover, it is not clear what actual action taken by Mr. Fierro was illegal. Does the government believe the gun belonged to Mr. Fierro, that he was hiding it for the co-defendant, that he held it in his hands, or that he took some other action which makes him guilty.

**Accordingly, Mr. Fierro requests disclosure of the following particulars:**

Count I: 26 U.S.C. §§ 5861(d), 5871; 18 U.S.C. § 2

(1)   State with as much particularity as possible in what ways the alleged gun possession affected interstate commerce either directly or indirectly.

(2)   State with as much particularity as possible the date(s) on which the alleged gun possession was in interstate commerce.

(3) State with as much particularity as possible action taken by Mr. Fierro which were tantamount to possessing an unregistered firearm. Is the government alleging that he owned the gun, held the gun, stored the gun or do something else? Does the government assert that if he touched or moved the gun that is tantamount to possession?

(4) State with as much particularity as possible action(s) taken by Mr. Fierro which were tantamount to aiding and possessing an unregistered firearm. Is the government seeking to prove that he knew the firearm was unregistered, that he knew the co-defendant did not lawfully possess the gun or had failed to register it?

WHEREFORE, for the foregoing reasons and such other that this Honorable Court may deem just and proper after a hearing on this Motion, Mr. Fierro respectfully requests that this Honorable Court grant this Motion and order the government produce a bill of particulars.

## IV.
## MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Mr. Fierro asserts Indictment must be dismissed because the government selectively targeted Mr. Fierro for prosecution based on his alienage/DACA status, in violation of the Fifth and Fourteenth Amendment. Defense counsel has been diligent in attempting to secure the information necessary to file this motion including reviewing all cases similarly situated in this district for the last five years. [Exs. C, D]. This research reflects that there are no cases in this district for at least the last five years, where a person, with no criminal history, was arrested by local police and was charged federally for possession of an unregistered firearm or with being an illegal alien in possession of a firearm unless: the person possessed firearms in connection with drug trafficking, or their case was initiated by a federal law enforcement agency. While defense counsel originally believed that this research alone would be enough to entitle him to additional discovery regarding the government's abhorrent decision to charge Mr. Fierro, there is case law which could be interrupted to the contrary. After

1  consultation with numerous attorneys and additional research, defense counsel believes
2  that he can get a substantial amount evidence directly from the District Attorney's Office
3  and the San Diego Police Department.  The defense has already requested this discovery
4  pursuant to the Public Records Act, Cal. Gov. Code §§ 6250, *et. seq*.  The defense has
5  already received a response from SDPD, but is waiting for the District Attorney's Office
6  to response.  The defense requests leave to file motions based on the new information.
7      WHEREFORE, for the foregoing reasons and such other that this Honorable
8  Court may deem just and proper after a hearing on this Motion, Mr. Fierro respectfully
9  requests that this Honorable Court grant this Motion.

    Respectfully submitted,

Dated:  February 7, 2018

  *s/ Jamal S. Muhammad*
**JAMAL S. MUHAMMAD**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Fierro

## CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon:

Lara A. Stingely; Assistant United States Attorney
Lara.Stingely@usdoj.gov; efile.dkt.gc1@usdoj.gov

**Richard B. Pray**
richardpray@sbcglobal.net

Respectfully submitted,

Dated:  February 7, 2018

*s/ Jamal S. Muhammad*
**JAMAL S. MUHAMMAD**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Fierro
Jamal_Muhammad@fd.org